UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
AMERICO FERNANDES,                        )
                                          )
            Plaintiff,                    )
                                          )      Civil Action No. 24-12519-JCB
v.                                        )
                                          )
TRAVELERS INSURANCE COMPANY,              )
                                          )
            Defendant.                    )
_____)


ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT
[Docket Nos. 17, 20]

June 6, 2025

Boal, M.J.

This action involves an insurance coverage dispute.  The parties dispute whether plaintiff Americo Fernandes is entitled to recover alternative housing expenses for his tenants pursuant to the policy's coverage for "fair rental value."  The parties have filed cross-motions for summary judgment.  Docket Nos. 17, 20.[1]  For the following reasons, this Court denies Fernandes' motion and grants Travelers' motion.

---

[1] On October 15, 2024, the parties consented to the jurisdiction of U.S. Magistrate Judge for all purposes.  Docket No. 5.

I.     <u>FACTS</u>[2]

Fernandes owns rental property located at 430 Cohannet Street, Taunton, Massachusetts (the "Premises"). SOF ¶ 1. The Premises include two "residential subsidized rental housing units." <u>Id.</u> On November 21, 2022, both apartments were occupied by tenants. <u>Id.</u> Fernandes collected $3,230 in monthly rent ($1,680 for Apartment 1 and $1,550 for apartment 2). <u>Id.</u>

Defendant Travelers Insurance Company issued a Landlord Dwelling Policy for the policy period of September 13, 2022, to September 13, 2023, providing coverage for the Premises subject to all of the terms, conditions, limitations, and exclusions of the Policy. SOF ¶ 2.

The Policy's Property Coverage D – Loss of Use coverage provides, in relevant part:

> **Fair Rental Value**. If a loss covered under the Property Coverage Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the amount of fair rental value of such premises lost, less any expenses that do not continue while it is not fit to live in.
>
> Coverage under Fair Rental Value will only apply when that part of the "residence premises" is held for rental or rented to others for a term of 6 consecutive months or more.
>
> Payment will be for the shortest time required to repair or replace such premises, but for no more than 24 months.

SOF ¶ 13; <u>see also</u> Docket No. 19-1 at 15-16.[3] The Coverage D – Loss of Use liability limit is

---

[2] The facts are taken from the parties' Joint Statement of Undisputed Facts For Summary Judgment Motions (Docket No. 19) ("SOF"). The parties have stipulated to these facts for purposes of this motion only. <u>See</u> SOF at 1 n.1. This Court construes the record in the light most favorable to the nonmovant and resolves all reasonable inferences in that party's favor. <u>Baum-Holland v. Hilton El Con Management, LLC</u>, 964 F.3d 77, 87 (1st Cir. 2020) (citations omitted).

[3] Citations to "Docket No. ___" are to documents appearing on the Court's electronic docket. They reference the docket number assigned by CM/ECF, and include pincites to the page numbers appearing in the top right corner of each page within the header appended by CM/ECF.

$65,000.  SOF ¶ 14.

The Policy also contained a Tenant Relocation Expense Coverage Endorsement, which is required by Massachusetts law.  SOF ¶ 16; <u>see also</u> Docket No. 19-1 at 37.  It provides, in relevant part:

> **Relocation Expense Coverage**.  When a "rented living quarters" in a building covered by this policy is made uninhabitable as a result of a loss by fire, this policy covers "relocation expense" incurred by the tenant or lawful occupant to relocate to other living quarters in the shortest possible time.
>
> The limit of liability for "relocation expense" shown in the Declarations under this Tenant Relocation Expense Coverage is the most we will pay for a "rented living quarters."

<u>Id.</u>  The Tenant Relocation Expense Coverage Limit is $750 per rental living quarter.  SOF ¶ 17.

On November 21, 2022, a water loss occurred at the Premises caused by a clogged drainpipe.  SOF ¶ 3.  The water loss caused property damage to the Premises and rendered the apartments uninhabitable.  <u>Id.</u>  As a result, Fernandes incurred expenses to provide alternate housing for the displaced tenants while the property damage was remediated.  SOF ¶ 4.  Specifically, Fernandes paid $24,216.75 in hotel costs incurred from December 2022 through July 2023.  SOF ¶ 8.  Fernandes continued to collect rental payments from his tenants while they were displaced.  SOF ¶ 9.  The residents of Apartment 1 returned to the Premises on July 16, 2023, and the residents of Apartment 2 returned to the Premises on July 19, 2023.  SOF ¶ 6.

Travelers and Fernandes reached an agreement as to the amount of the building loss under Coverage A of the Policy.  SOF ¶ 5.  Travelers paid $148,941.65 for building repairs, mitigation expenses, and required code upgrades.  <u>Id.</u>

Fernandes alleges that he lost net income from the rental of the Premises due to his payment of alternative housing for his tenants in addition to fixed costs incurred in owning and

maintaining the Premises.  SOF ¶ 12.  Travelers, however, did not make any payment to

Fernandes under the Fair Rental Value provision in the Policy.  SOF ¶ 15.

On May 25, 2023, Travelers responded to Fernandes' Chapter 93A and 176D demand

letter, noting that:

> To the extent that you want Travelers to revisit this claim for Loss of Use
> coverage, please provide copies of the lease agreements for both tenants.
> This includes the Housing Assistance Payments Contract (HAP Contract)
> and any other agreements with the housing authority or directly with the
> tenants governing the terms of the rental, including rent payments, and the
> provisions governing when the property becomes unfit to live in if any.
> Upon receipt of this information, we will be in a better position to determine
> if Travelers coverage position needs to be revisited and or if additional
> information is needed.

SOF ¶ 18.  On September 21, 2023, and October 11, 2023, Jason Floyd of Travelers requested

information to support Fernandes' claim for damages.  SOF ¶ 19.  Fernandes provided credit

card receipts confirming his payment of alternative housing expenses for his tenants.  Id.

II.    ANALYSIS

A.    Standard Of Review

Summary judgment is appropriate if the record, viewed in the light most favorable to the

nonmoving party "discloses 'no genuine issue of material fact' and [thus] demonstrates that 'the

moving party is entitled to a judgment as a matter of law.'"  Zabala-De Jesus v. Sanofi-Aventis

Puerto Rico, Inc., 959 F.3d 423, 427-428 (1st Cir. 2020) (quoting Iverson v. City of Boston, 452

F.3d 94, 98 (1st Cir. 2006)).  A dispute is genuine where the evidence "is such that a reasonable

jury could resolve the point in the favor of the non-moving party."  Rivera-Rivera v. Medina &

Medina, Inc., 898 F.3d 77, 87 (1st Cir. 2018) (citation omitted).  A material fact is one with the

"potential of changing a case's outcome."  Doe v. Trustees of Bos. College, 892 F.3d 67, 79 (1st

Cir. 2018).

"To avoid 'the swing of the summary judgment scythe,' the nonmoving party must adduce specific facts showing that a trier of fact could reasonably find in his favor." Johnson v. Johnson, 23 F.4th 136, 141 (1st Cir. 2022) (citation omitted). "The nonmovant cannot rely on 'conclusory allegations, improbable inferences, and unsupported speculation.'" Id. (citation omitted).

"Cross-motions for summary judgment do not alter the basic . . . standard, but rather simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Alasaad v. Mayorkas, 988 F.3d 8, 16 (1st Cir. 2021) (quoting Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001)).

B.    Insurance Interpretation Principles

"The interpretation of an insurance contract is a pure question of law." Ken's Foods v. Steadfast Ins. Co., 491 Mass. 200, 203 (2023) (citation omitted). "Interpretation of an insurance contract policy is no different from interpretation of any other contract." R.R. Ave. Props., LLC v. Acadia Ins. Co., 37 F.4th 682, 687 (1st Cir. 2022) (citation omitted).

The court construes the words of an insurance policy in their "usual and ordinary sense." Id. (citation omitted). The court must consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." Ken's Foods, 491 Mass. at 203 (citations omitted). Absent ambiguity, the court must give the policy language its plain and ordinary meaning. Sanders v. Phoenix Ins. Co., 843 F.3d 37, 42 (1st Cir. 2016); GRE Ins. Group v. Metro. Boston Housing P'ship, Inc., 61 F.3d 79, 81 (1st Cir. 1995) (citation omitted). "Ambiguities are resolved against the insurer, who drafted the policy, and in favor of the insured." GRE Ins. Group, 61 F.3d at 81. However, where the terms of the policy are required by statute, "the rule of construction resolving ambiguities in a policy against the insurer is

5

inapplicable." R.R. Ave. Props., LLC, 37 F.4th at 687-688 (citations omitted). "The insured bears the initial burden of proving that a claim falls within the grant of coverage, which, once established, shifts the burden onto the insurer to show the applicability of any exclusion." GRE Ins. Group, 61 F.3d at 81 (citation omitted).

C.    The Fair Rental Value Coverage Is Inapplicable Because
       Fernandes Continued To Collect Rent From His Tenants

Fernandes alleges that Travelers breached the Policy because it failed to pay under the Policy's Fair Rental Value Coverage provision. That provision, however, provides for recovery of "fair rental value of such premises lost, less any expenses that do not continue while it is not fit to live in." Docket No. 19-1 at 15 (emphasis added). The clear and plain meaning of the Policy requires a loss of fair rental value. Here, it is undisputed that Fernandes continued to collect rent from his tenants while the Premises were unhabitable, see SOF ¶9, and, therefore, had no such loss.

The fact that Fernandes paid for his tenants' alternate housing and the reasons for doing so are immaterial to the merits of his claim. The question is simply whether the Policy covered fair rental value and, under the undisputed facts in this case, it did not. Cf. Bruce v. Pacific Specialty Ins. Co., No. 15-cv-01323-RM-CBS, 2016 WL 11693598, at *8 (D. Colo. Aug. 15, 2016) ("Whatever Plaintiff's obligations may have been to his tenants, the issue here is instead what Pacific's obligations to Plaintiff were under the Policy."). Accordingly, I find that the Policy's Fair Rental Value Coverage does not apply to Fernandes' claim and Travelers is therefore entitled to judgment in its favor on Fernandes's breach of contract claim.

D.    Tenant Relocation Expense Coverage

By its express terms, the Tenant Relocation Expense Coverage Endorsement applies only when a rental unit is rendered "uninhabitable as a result of a loss by fire." Docket No. 19-1 at

6

37.  It is undisputed that the Premises were rendered uninhabitable because of a water loss caused by a clogged drainpipe, not a fire.  SOF ¶ 3.  To the extent that Fernandes seeks coverage under this provision, therefore, it is inapplicable to his loss.  Contrary to his arguments, there is no ambiguity to be resolved here.

>    E.    Travelers Is Not Estopped To Assert The Terms Of Its Policy

Fernandes argues that Travelers should be estopped from arguing that Fernandes is not entitled to Fair Rental Value under the Policy because its request for additional information, including rental agreements, led him to believe that coverage existed.  Docket No. 18 at 5.

Under Massachusetts law, "a liability insurer, 'having led the assured to rely exclusively on its protection during the period he might have protected himself . . . cannot, in fairness, thereafter withdraw that protection." Specialty Nat. Ins. Co. v. OneBeacon Ins. Co., 486 F.3d 727, 735 (1st Cir. 2007) (citation omitted).  This rule "rests on estoppel or waiver," and the "'familiar criteria for an estoppel' govern its application.  Id. (citation omitted).  "Thus, to become estopped from denying coverage under a liability insurance policy, an insurer must say or do something intended to induce conduct on the part of the insured; the insured must act or refrain from acting in reasonable reliance on the insurer's representation; and the insured must suffer some detriment as a result."  Id.

In arguing that equitable estoppel applies here, Fernandes relies only on Travelers' May 25, 2023, request for additional information regarding his claim.  Docket No. 18 at 5; Docket No. 24 at 4.  A request for additional information regarding his insurance claim cannot form the basis of any reasonable reliance on the part of Fernandes because the same correspondence argued that Fernandes was not entitled to a payment under the Fair Rental Value provision.  See Docket No. 19-2 at 2-3.  Indeed, the letter at issue was sent in response to a Chapter 93A demand letter sent

to Travelers by Fernandes' counsel.

In addition, Fernandes cannot show that he relied on Travelers' May 23, 2023, letter when he agreed to provide his tenants with alternative housing. The water loss occurred in November 2022 and Fernandes made the decision to provide alternative housing to his tenants as early as December 2022. See SOF ¶ 8. A statement made in May 2023 could not have possibly induced reliance in December 2022. Finally, estoppel "does not extend, broaden or enlarge coverage so as to include risks not covered within the terms of the policy." Alan Corp. v. Int'l Surplus Lines Ins. Co., 22 F.3d 339, 343 (1st Cir. 1994) (citation omitted). Accordingly, I find that Travelers is not estopped from asserting the terms of the Policy.

F.     Travelers Is Entitled To Judgment In Its Favor On Fernandes' Claim
       For Breach Of The Implied Covenant Of Good Faith And Fair Dealing

Fernandes also brings a claim for breach of the implied covenant of good faith and fair dealing. See Count II of the Complaint. "[E]very contract is subject to an implied covenant of good faith and fair dealing," which provides that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." NextSun Energy Littleton, LLC v. Acadia Ins. Co., 494 F.Supp.3d 1, 21 (D. Mass. 2020) (citations omitted). However, "the scope of the covenant is only as broad as the contract between the parties, and the implied covenant does 'not create rights or duties beyond those the parties agreed to when they entered into the contract.'" Id. (citations omitted). "The fact that an insurer contests coverage, without more, is not sufficient to prove a breach of the implied covenant of good faith and fair dealing, even if the insurer's position proves to be incorrect." Id. (citation omitted).

As discussed above, Fernandes' claim for fair rental value is not covered by the Policy. Fernandes' breach of the implied covenant claim therefore fails as a matter of law because

Travelers has fully performed its obligations under the Policy.  Accordingly, Travelers is also entitled to judgment in its favor on Fernandes' claim for breach of the covenant of good faith and fair dealing.

III.    <u>ORDER</u>

For the foregoing reasons, this Court denies Fernandes' motion for summary judgment and grants Travelers' motion for summary judgment.  Within two weeks, the parties shall file, jointly if possible and separately if necessary, a status report regarding their proposed disposition of Fernandes' Chapter 93A claim.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge

9